LIVINGSTON COUNTY, Appellant, v. JOHN GRAVES *et al.*, Respondents.

*Contract—Repairs.*—Where the defendant contracted with the plaintiff to build a bridge in accordance with certain plans and specifications, and bound himself to keep such bridge in repair for the term of three years, he is not liable to rebuild if the bridge be destroyed by fire.

*Appeal from Livingston Circuit Court.*

*Aikman Welch*, attorney general, for appellant.

I. The court erred in refusing to strike out parts of defendants' answer, as moved by plaintiff.    The defences set up are inconsistent.    In the fifth and sixth counts defendants deny the validity of the contract, and deny all responsibility thereon. In the first and second counts the defendants admit their responsibility on the contract, but attempt to confine and limit that responsibility.    In the third count they plead a full compliance with the contract as they construe it.    In the fourth count they plead a want of consideration.    These inconsistent defences should have been stricken out.    (2 R. C. 1855, p. 1233, § 14.)

II. The court erred in permitting respondents to read in evidence the order of the Livingston County Court.    Said order was not competent testimony to vary the terms of the contract sued upon.    The responsibility of respondents was upon their bond, and this order could not increase or diminish

that responsibility. A bond executed in pursuance of a statute is valid though not exactly conforming to such statute; *a fortiori*, the bond will be valid though it may vary in a single particular from the order of the county court. (State v. Thomas, 17 Mo. 503; Gathwright v. Callaway Co. 10 Mo. 664; United States v. Tingley, 5 Peters, 128; Grant & Finney v. Brotherton's adm'r, 7 Mo. 458. See also Brown v. Crawford Co. 8 Mo. 660; and Bogarth v. Caldwell Co. 9 Mo. 355.)

III. Where an agent or servant shall depart from the instructions of his principal or master in the performance of some act, and the principal or master, after being informed of such variance, shall acquiesce therein for a considerable length of time, and until rights and responsibilities have accrued thereon, such principal or master will be held as having ratified the act, and it becomes as valid as if strictly in accordance with the instruction given, and neither the principal or master, nor the party with whom the servant or agent may contract, will be allowed to take advantage of such variance after such contract shall have been fully complied with by one party and partially so by the other. A subsequent ratification is equivalent to a previous authority. (Paley on Agency, 143; Ward v. Evans, 6 Modern, 37; Thorold v. Smith, 11 Modern, 88; Wilson v. Poulter, 2 Strange, 859; Lent v. Padelford, 10 Mass. 236; Barnaby v. Barnaby, 1 Pick. 221; Culver v. Ashley, 19 Pick. 300; 1 Amer. Leading Cases, 589, and authorities cited.) This rule is as applicable to corporations as to individuals. (Angell & Ames on Corp. 351; Fleckner v. The Bank of the U. S., 8 Wheat. 363.)

IV. The covenant of the respondents to keep the bridge in repair for three years includes a covenant to rebuild in case of the destruction of such bridge by fire or other accident. A party will be excused from the performance of duty when such duty is created *by law*, without any default in him; but where the party *by his own contract* creates such duty, he is bound to make it good, notwithstanding any accident by inevitable necessity, because he might have provided against it by his contract. (2 Sanders, 422, *n.* 2; Phillips v. Stevens,

16 Mass. 237 ; Beach v. Crain, 2 Comst., N. Y., 93 ; Chitty on Cont. 343, 344 ; Pym v. Blackburn, 3 Vesey, 38 ; Taylor on Landlord and Tenant, 230.)

The Legislature has changed this well-established rule of law so far as a tenant's liability is concerned. (R. C. 1855, p. 352.) But the principle remains in all its force in all other cases to which it may be applicable ; *expressio unius est exclusio alterius.* The defendants in the first count of their answer admit that the covenant to keep in repair will include a total loss arising " from the perils to which bridges are ordinarily liable, to-wit, the dangers from floods, high water, and the like;" but a covenant to repair includes a loss by fire as well as by flood.

*Ray,* for respondents.

There are several matters of defence set up in the answer, all of which are designed to raise the proper construction and validity of the bond sued on, to three of which only I propose to call the attention of the court :

I. That a loss by fire was not within the meaning of the contracting parties, and consequently not within the provision and protection of the bond.

II. That by the fourth section of act on bridges, 1845, the County Court are to determine how long the bridge shall be kept in repair (not less than two nor more than four years) ; and that said court by its order dated December 19, 1853, determined that it should be kept in repair for *two* years only after its completion, (12th of November, 1855,) and that it was not destroyed in that time, but after its expiration, (say 14th of February, 1858.) That the commissioner, in taking the bond for *three* years, violated the order of the court, exceeded his instructions, and that the bond is without authority of law, and therefore void ; that same was not binding on the county, and if so not obligatory on defendants. Contracts to be valid must be binding on *both* parties, or neither is bound.

III. That the covenant to *repair* contained in said bond is

without consideration, and therefore void, the whole of the contract price ($2,800) having been paid for the *erection*, and nothing paid, or agreed to be paid, for the covenant to repair.

The first and third propositions are mere questions of law —as a matter of construction—to be determined by inspection of the bond.

In opposition to the doctrine contained in the first proposition, it is contended " that it is an established rule that when a party by his own contract creates a duty or charge upon himself, he is bound to make it good if he can, notwithstanding any accident by inevitable necessity, because he might have provided against it by his contract." That this rule, though general, is not inflexible or inexorable, reference is had to the following authorities, to-wit : 22 Mo. 187 ; 6 J. J. Marshall, 528 ; 2 Dana, 229 ; 6 Mo. 324 ; 8 Mo. 33 ; 9 Mo. 867.)

The *intent* of the parties is the fundamental rule in construing contracts, to be arrived at, it is true, by the known rules of construction. These authorities, it is submitted, support this first proposition.

The fourth section of the act on bridges provides that the County Court shall first determine how long the bridges shall be kept in repair, (not less than two nor more than four years,) and the proof shows that said court determined by its order that the bridge should be kept in repair two years.) That determination of the court constituted the authority of the commissioner in the premises, and fixed the *limits* of his authority to act. He could not go beyond it or outside of it. If he did his principal ceased to be bound, and if so, the other party was under no obligation to perform a contract which the opposite party might disregard or not at his pleasure. The contract to be valid must be binding on both sides. Besides that, the petition shows that the bridge was in fact built and kept in repair for *two* years and more before it was destroyed, and that was in accordance to the law of the case and the order of the court in the premises, and the commis-

sioner had no authority to take any other sort of bond for any other length of time, either greater or less. (4 Mo. 84.)

BATES, Judge, delivered the opinion of the court.

This suit is brought upon a bond executed to the plaintiff by the defendants as the securities of Isaac C. Waldrip, conditioned, that whereas said Waldrip takes the contract for the building of a bridge across the east fork of Grand river, and describing the bridge and stating the time limited for its completion, " now if the said Isaac C. Waldrip shall construct said bridge at said point on said river according to the plan, specifications, manner, and of the materials as herein above set forth, by the time as herein set forth, and shall keep said bridge in repair for three years, then this bond is to be void, otherwise in force." The bond was dated June 2d, 1854. The bridge was completed about the 12th day of November, 1855, and Waldrip was paid the price agreed in the bond for its construction. On the 14th of February, 1858, the bridge was destroyed by fire, the cause of which fire was unknown. The plaintiff claims that, under the condition expressed in the bond that Waldrip should keep said bridge in repair for three years, the defendants are bound to make good the loss sustained by the destruction of the bridge by fire. The court below gave finding and judgment for defendants, and. the plaintiff brings the case into this court.

The first question for consideration, and the only one which we think it necessary to examine, is whether the condition to keep in repair for three years included an obligation on the part of the builder to rebuild when the bridge was destroyed by an accidental fire. The prime object to be accomplished by the contract of the parties was the erection of the bridge; and all the several parts of the contract are to be regarded as incidents of that main object. The agreement to keep the bridge in repair for a time can only be regarded as a providing means whereby it could be more certainly ascertained that the builder had fully complied with his contract by erecting a bridge proper for the use for which it was

required.    The destruction by fire had no  connection with any defect in the construction of  the bridge, and  did not result from any failure on  the part of the builder  to perform any part of  his contract for the erection  of the bridge.

Judgment affirmed.    Judges Bay and Dryden concur.